IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PROCONN POWER, INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| ) | |
| ) | No. 12 C 8097 |
| v. ) | |
| ) | Judge John A. Nordberg |
| STOLARIK BUILDERS, INC., ) | |
| ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

### Introduction

In this diversity jurisdiction lawsuit, plaintiff ProConn Power, Inc. ("ProConn") asserts two counts against defendant Stolarik Builders, Inc. ("Stolarik"). Stolarik has filed a motion to dismiss the second count, which combines into one count a state law defamation claim and a tortious interference claim. For the reasons set forth below, the motion is denied.

### Background

The following allegations are taken from the complaint and assumed true for purposes of ruling on this motion. This case arises out of a construction project known as the Department of Navy Midwest Automated Gate Program at the U.S. Naval Station, Great Lakes, Illinois (hereinafter, the "Project"). (Cmplt. ¶ 5.)

The U.S. Navy entered into a prime contract with Northrop Grumman. (¶ 6.) Northrop Grumman was required to furnish a payment and performance bond ("Payment Bond"). (*Id.*)

On June 1, 2011, plaintiff ProConn contracted with Alutiiq, Inc., a subcontractor of Northrop Grumman, to provide services for the Project. (¶ 7.) ProConn then entered into discussions with defendant Stolarik about the possibility of Stolarik working as a subcontractor to ProConn. (¶ 8.) However, ProConn and Stolarik never entered into a subcontract, in part because Stolarik never complied with subcontract requirements such as providing proof of insurance. (¶ 9.)

Even though the parties did not enter into a contract, on July 15, 2011, Stolarik sent several employees to the Project to begin work. (¶ 10.) When ProConn learned about this, it told Stolarik to stop working and leave the site because there was no subcontract . (¶ 11.) The workers stopped sometime around July 19th. (*Id.*)

On July 21st, ProConn wrote to Stolarik telling it to remove any equipment and to submit an invoice for the approximately two and a half days of work on the Project. (¶ 12.)

Stolarik did not respond to this letter. Instead, it began contacting the U.S. Navy, Northrop Grumman, and Alutiiq requesting payment for work it had done on the project. (¶ 13.)

After hearing about these requests, ProConn sent Stolarik a letter on July 3rd requesting that Stolarik cease contacting these entities and that it submit an invoice directly to ProConn for any work it believed it should be paid for. (*Id.*)

Stolarik again did not respond to the letter from ProConn. (¶ 14.) Instead, on July 9th, Stolarik submitted a claim against the Payment Bond for $344,239.98. (¶ 15.) This amount far exceeds the few days' worth of work done by a couple of employees. (¶ 16.)

On August 6, 2012, counsel for ProConn sent a letter to Stolarik requesting that it remove its claim on the Payment Bond because the parties never entered into a contract and because Stolarik's work could at best only account for a small fraction of the amount of money claimed. (¶ 17.) Stolarik did not respond to this letter, nor did it remove its claim on the Payment Bond. (*Id.*)

The complaint contains two counts. Count I is a claim for declaratory relief in which ProConn seeks a judicial declaration (pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202) that Stolarik has no right to make a claim on the Payment Bond and that such claim must be removed. (¶ 21.) Count II is a claim for defamation and tortious interference with business relationships. ProConn alleges that the claim on the Payment Bond has damaged its relationships with Alutiiq, Northrop Grumman, and the U.S. Navy and has defamed ProConn causing damage to its reputation. (¶¶ 32-33.)

**Analysis**

Stolarik has filed a motion to dismiss pursuant to Rule 12(b)(6). It does not seek to dismiss Count I; so this case will go forward with discovery no matter which way we rule on the present motion. Stolarik makes two basic arguments.

The first one is against the defamation claim. Stolarik argues that the filing of a claim against the Payment Bond cannot be defamatory because it is not a statement *about ProConn*. (Def. Op. Br. at 3, citing *Morton Grove Pharmaceuticals, Inc. v. Nat'l Pediculosis Ass'n, Inc.*, 494 F.Supp.2d 934, 939 (N.D. Ill. 2007).) Rather, it is a claim made on Northrop Grumman's bond. (*Id.*) Here is how Stolarik describes the argument in its opening brief:

> The only allegation is that [Stolarik] made a Payment Bond claim on Northrop
> Grumman's bond. Even if, *arguendo*, that act constitutes a "statement" for
> defamation purposes, it is a statement on Northrop Grumman's bond, not Plaintiff's. There is simply no allegation that a statement was made by [Stolarik] regarding [ProConn] in any manner, let alone a defamatory one.

(*Id.* at 3-4.)

We are not persuaded that this argument is grounds for dismissing the defamation claim. ProConn in its response brief explains how the filing of the payment bond would be viewed by those in this segment of construction industry as a false statement about ProConn. (Pl. Resp. Br. at 5.) In particular, although the claim is made on a bond by Northrop Grumman, the basis for requesting $344,239.98 is that ProConn was obligated to pay this large amount of money to Stolarik and was refusing to do so, either because it did not have the money or it was unwilling to live up to its contractual bargain. However, as ProConn alleges and as we must take as true, there was no contract and ProConn was under no obligation to pay Stolarik $344,239.98 since the only work done was a few days' worth of labor. As stated by ProConn, the filing of the bond is actionable *per se* "because it imputed to Northrop Grumman, the Navy, and Alutiiq that ProConn was incompetent, unfit, insolvent, or lacked the funds to pay Stolarik." (*Id.* at 7.) ProConn further explains that a claim on a payment bond has "serious repercussions for the contractor" and that a contractor's reputation for paying bills is especially important when doing public or government work. (*Id.*)

In its reply brief, Stolarik complains that ProConn's defamation claim rests on its "subjective belief" that its reputation would be tarnished in the construction industry by an assertion that it does not pay its bills. However, as Stolarik concedes in its reply brief, ProConn has cited to a treatise on construction law to support its claim that this understanding is shared by those in the industry. If ProConn's view is indeed an idiosyncratic outlier, this fact can be brought out through discovery and then this general issue can be addressed (if appropriate) on a motion for summary judgment. In general Illinois courts have looked at the following factors to determine whether a statement is defamatory: "(1) whether the statement has a precise and readily understood meaning; (2) whether the statement is objectively verifiable as true or false; and (3) whether the statement's literary or social context signals that it has factual content." *Rose v. Hollinger Int'l, Inc.*, 889 N.E.2d 644, 649 (Ill. App. Ct. 2008). In each case, the court should "evaluate the totality of circumstances." *Id.* Analyzing this context and these circumstances is generally better done after the parties have developed evidence through discovery.

Turning to Stolarik's argument, which seeks dismissal of the tortious interference claim, we also find that it is premature and not resolvable on a motion to dismiss. The parties agree on the legal elements for stating such a claim under Illinois law. As set forth in ProConn's response brief, they are: "(1) the existence of a valid business relationship or the reasonable expectancy of one by ProConn; (2) knowledge of it by Stolarik; (3) purposeful interference with it by

Stolarik preventing its realization; and (4) resulting damages to ProConn." (Pl. Resp. Br. at 8, citing *Dowd & Dowd Ltd. v. Gleason*, 639 N.E.2d 358 (Ill. 1998).)

Stolarik argues in its opening brief that ProConn "fails to allege even the most basic facts that would sufficiently constitute a claim for interference with a contract or with a prospective business relationship." (Def. Op. Br. at 4-5.) Beyond this conclusory sentence, Stolarik offers no specifics about what it believes the complaint is lacking.

Again, we find that the current allegations in the complaint are sufficiently detailed to go forward with discovery. As ProConn explains in its response brief, it has attached a series of letters to the complaint showing how ProConn repeatedly asked Stolarik to submit an invoice for any amounts it believed it was owed, but Stolarik repeatedly ignored these letters. Instead, it went over ProConn's head and submitted a claim directly to the general contractor thus trying to make ProConn look bad. (Pl. Resp. at 8.) In addition, Stolarik allegedly made an inflated claim far in excess of any amounts it could justify.

In its reply brief, Stolarik questions whether any damage has been done to ProConn's business relationship with Northrop Grumman, Alutiiq, and the U.S. Navy because (according to Stolarik) those relationships still exists. (Def. Reply at 2-3.) We need not analyze this argument now because it raises a fact question – about the nature of the ongoing relationships and whether any damage has been done – that is not resolvable on a motion to dismiss. This is another issue for the parties to explore in discovery, which they should now turn to. For all the above reasons, the motion to dismiss is denied.

**ENTER:**

*/s/ John A. Nordberg*
**JOHN A. NORDBERG**
**Senior United States District Court Judge**

**DATED: May 9, 2013**